[Cite as *State v. Wisniewski*, 2021-Ohio-3031.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110092 |
| v. | : | |
| MARK WISNIEWSKI, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 2, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623494-A and CR-18-628167-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Patrick J. Lavelle and Jeffrey Schnatter,
Assistant Prosecuting Attorneys, *for appellee.*

The Law Office of Jaye M. Schlachet, and Jaye M.
Schlachet and Eric M. Levy, *for appellant.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant Mark Wisniewski ("Wisniewski") appeals from

his conviction for involuntary manslaughter. Specifically, Wisniewski argues that

his convictions were not supported by sufficient evidence and were against the

manifest weight of the evidence, and that the trial court erred in failing to award him jail-time credit. After a thorough review of the record and law, we affirm the judgment of the trial court.

**Factual and Procedural History**

{¶ 2} The charges in this case resulted from a drug overdose on March 11, 2015. At that time, 59-year-old Jack Heaton ("Heaton" or "the victim") was living with his mother in Bedford, Ohio. Around 10 a.m. on March 11, 2015, Heaton's mother found him unresponsive in the basement of their home. She called her daughter, also Heaton's sister, and asked her to come over because she could not wake Heaton up. Heaton's sister called 911 and headed to her mother's house. When Heaton's sister arrived, police and paramedics were already there. Police prevented her from going into Heaton's basement room and directed her to wait upstairs with her mother.

{¶ 3} Firefighter Stephanie Balochko ("Balochko") responded to the scene in her capacity as a firefighter and paramedic for the city of Bedford. Balochko found Heaton unresponsive in a chair near a computer desk in his basement. Heaton had no pulse, was cool to the touch, and an EKG confirmed that he was deceased. After calling the hospital and the coroner and relaying that Heaton was deceased, Balochko left the scene.

{¶ 4} Officer Andrew DiMatteo ("DiMatteo") and Lieutenant Paul Kellerman ("Kellerman") also responded to the scene in their capacity as police officers in the city of Bedford. DiMatteo arrived at the home, observed Heaton

slumped over in a chair in the basement, and proceeded to secure the scene. DiMatteo remained on the scene in order to preserve evidence and secure the scene while the medical examiner and the Cuyahoga County Heroin Involved Death Investigation ("HIDI") team arrived. Kellerman oversaw the investigation and assisted in securing the scene.

{¶ 5} Detectives Tamika Agnew ("Agnew") and Douglas Jopek ("Jopek") responded to the scene in their capacity as narcotics detectives with HIDI. Agnew oversaw the investigation and interviewing of the family members on the scene. Jopek assisted the medical examiner on the scene, took photographs of the scene, and collected evidence around Heaton's body. The evidence Jopek collected included a cell phone, a razor blade with residue, and one unfolded square of paper with residue. The razor blade and square of paper subsequently tested positive for heroin residue.

{¶ 6} Justin Wilson ("Wilson"), a death investigator with the Cuyahoga County Medical Examiner's office, responded to the scene as well. Wilson took photographs of evidence on the scene and also collected various pieces of evidence, including prescription pills. Wilson also prepared a report, noting that he had learned from family members that Heaton had a history of prescription drug abuse and multiple suicide attempts within the last five years.

{¶ 7} Heaton's brother arrived at the house after his sister called him and told him that Heaton had died. After the responding officers and paramedics had left, and Heaton's body had been removed from the home, Heaton's brother went

into his bedroom. He observed Heaton's wallet on top of his bed, with his driver's license sitting on top of the wallet. He picked them up and put the driver's license inside the wallet. Upon opening the billfold of the wallet, Heaton's brother observed "what appeared to be some packets folded up in like a magazine page or something." He took the packets upstairs, showed his mother and sister, and then called the Bedford Police Department. Kellerman arrived at the home and retrieved the wallet and the packets from Heaton's brother. Kellerman took the evidence back to the police station and delivered it to Detective Shawn Klubnik ("Klubnik"), the property officer for the Bedford Police Department. Kellerman informed Klubnik that the wallet was suspected to contain drugs. Klubnik looked inside the wallet, found the packets that were suspected to contain drugs, and put the packets into a narcotics envelope and sealed it. Subsequently, Detective Agnew retrieved the evidence from the Bedford police and submitted it to the Cuyahoga County forensics lab.

{¶ 8} The two packets were subjected to forensic testing and it was determined that they contained heroin and they tested positive for Wisniewski's DNA. No DNA testing was done on the square of paper that tested positive for heroin residue. Additionally, as part of the investigation in this case, Detective Agnew went through Heaton's cell phone. She observed 54 telephone calls between Heaton and a number that belonged to Wisniewski in March 2015. The last phone call before Heaton's death was a 23-second phone call on March 10, 2015, the day before Heaton died.

{¶ 9} The deputy medical examiner, David Dolinak, M.D., ("Dolinak"), ultimately determined that Heaton died as a result of acute heroin, clonazepam, amphetamine, and fluoxetine toxicity, and the death was deemed accidental.

{¶ 10} As a result of Heaton's death and the subsequent investigation, 0n September 17, 2018, a Cuyahoga County Grand Jury indicted Wisniewski on the following five counts, relating to events that took place on March 11, 2015: Count 1, involuntary manslaughter in violation of R.C. 2903.04(A), with corrupting another with drugs and/or drug trafficking listed as the predicate offense; Count 2, corrupting another with drugs in violation of R.C. 2925.02(A)(3); Count 3, trafficking in violation of R.C. 2925.03(A)(1); Count 4, trafficking in violation of R.C. 2925.03(A)(2); and Count 5, drug possession in violation of R.C. 2925.11(A). Wisniewski pleaded not guilty to these charges and was appointed counsel.

{¶ 11} On March 21, 2019, Wisniewski filed a motion captioned "Defendant Invokes Right to Self-representation." At a hearing on April 8, 2019, the court discussed the right to counsel with Wisniewski, informed him of the charges and potential penalties he was facing, and advised him as to the perils of representing himself at trial. The court confirmed that Wisniewski was waiving his right to counsel knowingly, intelligently, and voluntarily, and appointed standby counsel.

{¶ 12} Over the next year, multiple pretrial hearings were held and discovery was exchanged. On June 16, 2020, Wisniewski filed a motion to dismiss for lack of speedy trial. On July 20, 2020, the state filed a response to that motion. On August

18, 2020, the court held a hearing on Wisniewski's motion to dismiss and ultimately denied that motion.

{¶ 13} Between August 18 and September 15, 2020, Wisniewski filed multiple pretrial motions. On September 29, 2020, prior to trial, the court heard arguments and ruled on these motions. In connection with the arguments on his motions, Wisniewski stipulated that the papers found at the scene, but not the heroin inside them, came from him. He also stipulated as to the expert reports identifying the drugs found at the scene as heroin.

{¶ 14} Wisniewski waived his right to a jury trial, and the case proceeded to a bench trial on September 29, 2020. Heaton's sister and brother both testified as to the events surrounding their brother's March 2015 death. They both testified that Heaton had struggled with drug and alcohol addiction since high school. The responding officers, detectives, and medical examiner testified at trial as to the events described above.

{¶ 15} At the close of the state's case, Wisniewski objected to photographs of the two packets found in Heaton's wallet, as well as the packets themselves, on the basis that they were not found by police on the scene and there was a break in the chain of custody. The court overruled this objection and the exhibits were admitted into evidence. Wisniewski then renewed his motion to dismiss based on a violation of his speedy trial rights, and the court denied that motion. Finally, Wisniewski moved for a Crim.R. 29 dismissal of all counts, arguing that the state failed to prove that he sold heroin to Heaton. The state opposed this motion. The court denied

Wisniewski's motion. Wisniewski did not present any evidence, and he chose not to testify. The parties made their closing arguments.

{¶ 16} On October 8, 2020, the court returned a verdict of guilty on the involuntary manslaughter, corrupting another with drugs, and drug possession counts, as well as one of the drug trafficking counts, in violation of R.C. 2925.03(A)(1). The court found Wisniewski not guilty of drug trafficking in violation of R.C. 2925.03(A)(2).

{¶ 17} On October 20, 2020, the court held a sentencing hearing. The court heard statements from Wisniewski, the assistant prosecuting attorney, and Heaton's sister. The state acknowledged that the involuntary manslaughter, corrupting another with drugs, and drug possession counts would merge for sentencing and elected to proceed with sentencing on the involuntary manslaughter charge. The court sentenced Wisniewski to 11 years on the involuntary manslaughter charge and 12 months on the drug possession charge, to be served concurrently, for a total sentence of 11 years. At sentencing, the court stated that it intended to credit Wisniewski for the time he spent in custody during the pendency of the case. The state argued that because Wisniewski was already serving a sentence related to an involuntary manslaughter conviction from Summit County stemming from a heroin overdose, he would not be entitled to jail-time credit for the time spent in custody awaiting trial in the instant case. The court stated that it would take the issue under advisement and indicate its decision on jail-time credit in the sentencing journal entry.

{¶ 18} In the October 20, 2020 sentencing journal entry, the court described the sentence imposed on the involuntary manslaughter charge, but neglected to include the sentence imposed on the drug possession charge. A separate journal entry issued the same day read:

> At the time of sentencing, the state opposed the court's granting of jail-time credit to the defendant as he was incarcerated on another, unrelated case — Summit County Case No. CR-2017-09-3481-A ("Summit County Case"). The state relies on the decision of the Ohio Supreme Court in *State v. Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, which held that: "A defendant is not entitled to jail time credit for pre-sentence detention time when held on bond if, during the same period of time, he is serving a sentence on an unrelated case." *Id.* at ¶24. The court finds the state's argument persuasive on this issue and awards defendant no jail credit on this case prior to today's entry.

On November 13, 2020, Wisniewski appealed.

{¶ 19} On April 20, 2021, this court sua sponte remanded the case to the trial court to issue a nunc pro tunc sentencing entry to correct the omission of the sentence on the drug possession charge. On April 30, 2021, the trial court issued a nunc pro tunc entry correcting the error in its original sentencing journal entry.

{¶ 20} Wisniewski presents three assignments of error for our review:

> I. The evidence was insufficient to sustain a conviction for involuntary manslaughter through either predicate offense. The resulting conviction deprived appellant Wisniewski of procedural and substantive due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

> II. Appellant Wisniewski's conviction for involuntary manslaughter for drug trafficking or corrupting another with drugs is against the manifest weight of the evidence. This deprived appellant of due process of law as guaranteed by the Fifth and Fourteenth Amendments of the

United States Constitution and Article I, Section 10 of the Ohio Constitution.

III. The trial court erred in violation of Appellant's right to equal protection or otherwise [erred] where it did not award credit for time served pending sentencing in Appellant's Summit County Case.

## Legal Analysis

### I. Sufficiency of the Evidence

{¶ 21} In Wisniewski's first assignment of error, he argues that the state presented insufficient evidence to sustain his involuntary manslaughter conviction. Specifically, he argues the state failed to present sufficient evidence that Wisniewski was guilty of either drug trafficking or corrupting another with drugs. Without sufficient evidence of either of the possible predicate offenses for the involuntary manslaughter charge, Wisniewski argues that the involuntary manslaughter conviction should be vacated.

{¶ 22} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 23} "Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, "'but may also be more certain, satisfying, and persuasive than direct evidence.'" *Id.*, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 24} Wisniewski was charged with involuntary manslaughter in violation of R.C. 2903.04(A), which provides that "no person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." In the indictment, the involuntary manslaughter charge alleged that Heaton's death was the proximate result of Wisniewski committing or attempting to commit the felony offense of corrupting another with drugs and/or drug trafficking. Wisniewski was also charged separately with corrupting another with drugs in violation of R.C. 2925.02(A)(3) and drug trafficking in violation of R.C. 2925.03(A)(1). The state argued at trial, and the court in announcing its verdict

agreed, that the evidence showed that Wisniewski committed both predicate offenses.

{¶ 25} R.C. 2925.02(A)(3), corrupting another with drugs, provides that no person shall knowingly "[b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent." R.C. 2925.02(B) provides that division (A)(3) "does not apply to manufacturers, wholesalers, licensed health professionals authorized to prescribe drugs, owners of pharmacies, and other persons whose conduct is in accordance" with various specific chapters of the Revised Code.

{¶ 26} R.C. 2925.03(A)(1), drug trafficking, provides that no person shall knowingly "[s]ell or offer to sell a controlled substance or a controlled substance analog." Pursuant to R.C. 2925.01(A), the word "sale" in association with drug trafficking shall be given the same meaning as "sale" in R.C. 3719.01(U), which "includes delivery, barter, exchange, transfer, or gift * * *." Like the corrupting another with drugs statute, R.C. 2925.03(B)(1) provides that R.C. 2925.03 does not apply to "manufacturers, licensed health professionals authorized to prescribe drugs, pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with" various specific chapters of the Revised Code.

{¶ 27} Wisniewski relies on the exemptions in R.C. 2925.02(B) and 2925.03(B)(1) and argues that the state was required to prove that he was not a licensed health professional or otherwise. Wisniewski argues that because a

defendant's belonging to one of the excluded groups in the statutory exemptions is not an affirmative defense, it was instead an essential element of the offenses that the state of Ohio had to prove beyond a reasonable doubt at trial. This argument fundamentally misinterprets the relevant statutes.

{¶ 28} The exemptions in R.C. 2925.02(B) and 2925.03(B)(1) provide that the offenses of corrupting another with drugs and drug trafficking do not apply to certain licensed professionals who are complying with applicable statutory or regulatory requirements. *State v. Nucklos*, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶ 1. The Ohio Supreme Court in *Nucklos* held that when the state prosecutes an otherwise exempt licensed health professional for one of these offenses, noncompliance with applicable statutory or regulatory requirements is an essential element of the offense that the state must prove beyond a reasonable doubt, and not an affirmative defense. *Id.* Wisniewski relies on *Nucklos* for his assertion that proving whether a defendant falls into one of the exempt categories is an element of the offense and not an affirmative defense. This reliance is misplaced. In *Nucklos*, because the defendant was a licensed health professional pursuant to R.C. 2925.03(B)(1), the state was required to prove that Nucklos had engaged in statutory or regulatory noncompliance in order to secure a drug trafficking conviction. The court in *Nucklos* determined that the defendant was not required to establish that he had complied with relevant statutory or regulatory requirements; rather, the state was required to prove his noncompliance beyond a reasonable doubt. *Id.* Nowhere in *Nucklos*, or any other case reviewed by this court,

has the Ohio Supreme Court interpreted either the drug trafficking or corrupting another with drugs statutes to require the state to prove that the defendant is *not* a licensed health professional in order to prosecute them for those offenses. This interpretation reads an additional element into both offenses, and we decline to adopt this interpretation here. Further, heroin is not a legal drug; therefore, the statutory exemption in R.C. 2925.03(B)(1) is inapplicable. R.C. 2925.03(C)(6).

{¶ 29} Our review of the record shows that the state presented sufficient evidence of the essential elements of each offense. Here, with respect to corrupting another with drugs, the state was required to prove beyond a reasonable doubt that Wisniewski knowingly, by any means, furnished heroin to Heaton and thereby caused him serious physical harm. While Wisniewski is correct that there is no direct evidence that Wisniewski provided Heaton with the heroin he ingested immediately prior to his death, there is ample circumstantial evidence.

{¶ 30} The state presented evidence that Heaton was buying drugs from a long-time friend who lived in his neighborhood in the form of testimony from Heaton's sister. The state also presented evidence that Heaton and Wisniewski were in regular phone contact, including a phone call the day before Heaton's death. Evidence found at the scene included three similar packets of magazine-like paper. Two of these packets were unopened, contained heroin, and tested positive for Wisniewski's DNA. Wisniewski conceded that the packets — but not the heroin inside — came from him. The third packet was opened, had creases showing that it had been folded in the same way as the other packets, and contained heroin residue.

No DNA testing had been done on the third packet. This evidence, when viewed in a light most favorable to the state, established that Wisniewski provided Heaton with heroin, satisfying the first element of the corrupting another with drugs charge.

{¶ 31} The corrupting another with drugs offense also required the state to establish that by furnishing the victim with drugs, the defendant caused the victim serious physical harm. R.C. 2925.02(A)(3). Here, the state presented evidence that Heaton died as a result of acute heroin toxicity. This fatal overdose obviously constitutes serious physical harm. Additionally, this court has previously held that heroin carries a substantial risk of overdose and death, and is generally a serious and deadly drug that causes physical harm every time it is administered. *State v. Price*, 2019-Ohio-1642, 135 N.E.3d 1093, ¶ 54 (8th Dist.). Therefore, the state presented sufficient evidence to support the charge of corrupting another with drugs.

{¶ 32} With respect to the drug trafficking charge, the state was required to prove beyond a reasonable doubt that Wisniewski knowingly sold or offered to sell heroin to Heaton. In addition to the physical evidence described above, the state presented evidence that Heaton had known the person he was purchasing drugs from for years and lived in the same neighborhood as this person; likewise, the evidence at trial established that Wisniewski had known him for years and lived around the corner from him. Taking into consideration Wisniewski's stipulation that he was "the source of the packaging material" that contained the heroin, and viewing all of the evidence in the light most favorable to the state, it is reasonable to

infer through circumstantial evidence that Wisniewski engaged in drug trafficking. Therefore, the state presented sufficient evidence to support the drug trafficking charge.

{¶ 33} Having determined that both of the possible predicate offenses for involuntary manslaughter were supported by sufficient evidence, we also conclude that the involuntary manslaughter charge was supported by sufficient evidence. To establish that Heaton committed involuntary manslaughter, the state was required to prove beyond a reasonable doubt that he caused Heaton's death as a proximate result of either corrupting another with drugs or drug trafficking.

{¶ 34} Wisniewski argues that the evidence was insufficient to show that Heaton's death was the proximate result of either offense here. Specifically, he argues that Heaton's abuse of prescription pills could have caused his death. We disagree. The deputy medical examiner, Dolinak, testified that the cause of Heaton's death was acute heroin, clonazepam, amphetamine, and fluoxetine toxicity, and that the manner of death was accidental. Although Dolinak testified that Heaton appeared to be abusing prescription drugs, he also testified that even without the other drugs, the heroin toxicity would have been sufficient to result in Heaton's death. Further, he testified that the specific levels of heroin metabolites found in Heaton's blood were consistent with levels he has seen in fatal heroin overdoses, and that other characteristics of Heaton's body were characteristic of fatal heroin overdoses. Therefore, the state presented sufficient evidence of proximate causation required for the involuntary manslaughter charge. For the foregoing reasons, we

find that Wisniewski's convictions were supported by sufficient evidence. Therefore, we overrule his first assignment of error.

## II. Manifest Weight of the Evidence

{¶ 35} In his second assignment of error, Wisniewski argues that his convictions were against the manifest weight of the evidence. Unlike a challenge to the sufficiency of the evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, citing *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.)

{¶ 36} In support of his manifest weight argument, Wisniewski argues that Heaton was suicidal and abused multiple prescription opiates. He emphasizes both the presence of other drugs in Heaton's system and the trial court's reference to the other drugs in rendering its verdict. Wisniewski also reiterates his arguments

regarding the alleged dearth of evidence that he actually provided Heaton with heroin. To the extent that Wisniewski reiterates his arguments regarding whether or not he actually provided Heaton with heroin, we find these arguments to be without merit for the reasons articulated in our discussion above.

{¶ 37} Wisniewski characterizes Heaton's death as an opiate overdose and not specifically a heroin overdose. He points to one particular exchange with Dolinak, in which Dolinak was asked, with respect to one particular compound, if there was any way of telling if that compound was from heroin or from other opiates, and Dolinak confirmed that there was not. Viewing this exchange in the greater context of Dolinak's testimony, however, we are not persuaded by Wisniewski's argument. Dolinak testified that heroin was the primary cause of Heaton's death as follows:

> DEFENSE: As you stated, the cause of death was acute heroin, clonazepam, amphetamine, and fluoxetine toxicity, correct?
>
> DOLINAK: That's right.
>
> DEFENSE: Can you say for sure if any one of those caused the death more than the other?
>
> DOLINAK: I can single out the heroin as being the main factor here, and the others just provided some contributory toxicity.
>
> DEFENSE: So can you say for sure that without the other drugs he would have died?
>
> DOLINAK: I think so, yes.
>
> DEFENSE: You can say that positively?
>
> DOLINAK: Yes.

While Wisniewski asserts that Heaton still might have died even if he had not taken heroin, nothing in the record supports this assertion. Likewise, the possibility that Heaton may have committed suicide is undermined by the record and ultimately has no bearing on our manifest weight analysis. The manner of death was determined to be accidental, and even if Heaton had intended to commit suicide, he did so using heroin he purchased from Wisniewski. As stated above, it was foreseeable that heroin would cause serious physical harm or death. Because this was not the exceptional case in which the trial court lost its way, we conclude that Wisniewski's convictions are not against the manifest weight of the evidence. Wisniewski's second assignment of error is overruled.

## III. Jail-Time Credit

{¶ 38} In his third assignment of error, Wisniewski argues that the trial court erred in failing to award him credit for time served pending his sentence in a separate case from Summit County.

{¶ 39} This court reviews the trial court's determination as to the amount of jail-time credit under the "clearly and convincingly" contrary-to-law standard. *State v. Claggett*, 8th Dist. Cuyahoga No. 108742, 2020-Ohio-4133, ¶ 30, citing *State v. Perkins*, 11th Dist. Lake Nos. 2018-L-084 and 2018-L-098, 2019-Ohio-2288, ¶ 12. It is Wisniewski's burden to establish that the trial court erred in its award of jail-time credit. *Id.*, citing *State v. Haworth*, 11th Dist. Portage Nos. 2019-P-0047, 2019-P-0048, and 2019-P-0049, 2020-Ohio-1341, ¶ 29, citing *State v. Corpening*, 2019-Ohio-4833, 137 N.E.3d 116, ¶ 27 (11th Dist.)

{¶ 40} R.C. 2967.191(A) provides, in relevant part, that the department of rehabilitation and correction "shall reduce the prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial."

{¶ 41} On March 7, 2018, Wisniewski was sentenced in Summit County Case No. CR-2017-09-3481 to eight years in prison for charges unrelated to the instant case. At that time, Wisniewski was credited with 149 days of jail-time credit for the time in jail awaiting trial and sentence in Summit County.

{¶ 42} Wisniewski was indicted in the instant case on September 17, 2018, at which point he was serving his sentence for the Summit County case. On October 20, 2020, Wisniewski was sentenced in this case to 11 years, to be served concurrently with the Summit County case, with no credit for time served. Because the sentence in this case was longer than the Summit County sentence, the 11-year sentence in this case subsumed the Summit County sentence. Wisniewski argues that this improperly eliminated his 149 days of jail-time credit.

{¶ 43} The state correctly points out that Wisniewski is not entitled to jail-time credit for time served awaiting trial in the instant case because he was simultaneously serving a sentence on an unrelated case. *State v. Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, 124 N.E.3d 811, ¶ 24. Wisniewski is not arguing that he is entitled to jail-time credit for the time between his September 2018 indictment and October 2020 sentence, however. Instead, he is arguing that he should still be

entitled to the 149 days of jail-time credit prior to being sentenced in his Summit County case.

{¶ 44} The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions. *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶ 7. Because the Equal Protection Clause does not tolerate disparate treatment of defendants based on their economic status, the United States Supreme Court has repeatedly struck down rules and practices that discriminate against defendants based solely on their ability to pay fines and fees. *Id.*

{¶ 45} Wisniewski relies heavily on *Fugate*, in which the Ohio Supreme Court addressed the application of jail-time credit where a defendant is sentenced to concurrent as opposed to consecutive sentences:

> When a defendant is sentenced to consecutive terms, the terms of imprisonment are served one after another. Jail-time credit applied to one prison term gives full credit that is due, because the credit reduces the entire length of the prison sentence. However, when a defendant is sentenced to concurrent terms, credit must be applied against all terms, because the sentences are served simultaneously. If an offender is sentenced to concurrent terms, applying credit to one term only would, in effect, negate the credit for time that the offender has been held. To deny such credit would constitute a violation of the Equal Protection Clause. Therefore we hold that when a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term.

*Fugate* at ¶ 22. In *Fugate*, however, the defendant was held on each of the charges before his sentencing, and thus was entitled to a reduction of each concurrent prison term.

{¶ 46} Wisniewski's case is more akin to *State ex rel. Rankin v. Mohr*, in which the Ohio Supreme Court found that the Ohio Department of Rehabilitation and Correction "had no duty to reduce [a prisoner's] 13-year sentence by the number of days that the prisoner was confined for other crimes *before* he received the 13-year sentence." *State ex rel. Rankin v. Mohr*, 130 Ohio St.3d 400, 2011-Ohio-5934, 958 N.E.2d 944, ¶ 2. The court went on to say that the fact that the 13-year sentence was ordered to be served concurrently with his prior sentences did not affect the determination that the prisoner was not entitled to a reduction of his 13-year sentence. *Id.* Therefore, applying this rationale to Wisniewski, neither the fact that he served 149 days for his Summit County crimes before he received his 11-year sentence in the instant case nor the fact that the trial court here ordered his 11-year sentence to be served concurrently with his eight-year Summit County sentence does not entitle Wisniewski to a reduction of his 11-year sentence. Further, the court in *Rankin* specifically found that the holding in *Fugate* did not require a different result because in *Fugate*, the defendant was held on each of the charges before his sentencing, and he was thus entitled to a reduction of each concurrent prison term. *Id.* For these reasons, the trial court appropriately declined to award Wisniewski jail-time credit. Wisniewski's third assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

LISA B. FORBES, J., and
EMANUELLA D. GROVES, J., CONCUR